**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

*United States of America v. Robert Daniel Bell*
Case No. 3:19-cr-00066-TMB-MMS-3

By:          THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:     ORDER FROM CHAMBERS

The matter comes before the Court on Defendant Robert Daniel Bell's Motion for Compassionate Release Under 18 U.S.C. § 3285(c)(1)(A)(i)[1] (the "Motion").[2] Bell argues there are extraordinary and compelling reasons warranting his early release, including a recent diagnosis of Stage III lung cancer and other medical issues.[3] He asks the Court to reduce his sentence to time-served and agrees to a condition of supervised release that he be placed in a transitional living facility so he can seek needed medical care.[4] The Government opposes the Motion,[5] while the U.S. Probation & Pretrial Services ("USPO") supports the Motion.[6] The parties held oral argument on December 19, 2023.[7] For the following reasons, the Court **GRANTS** the Motion.

    *A. Background*

On January 10, 2021, Bell pleaded guilty to Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) (Count 1).[8] On October 15, 2021, the Court sentenced Bell to a below-guidelines term of 72 months' imprisonment, followed by 5 years

---

[1] 18 U.S.C. § 3582(c)(1)(A)(i) ("The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction.").
[2] Dkt. 366 (Motion for Compassionate Release).
[3] *Id.* at 2–7, 10.
[4] *Id.* at 14–15.
[5] Dkt. 369 (Government Response in Opposition).
[6] Dkt. 370 (Sealed USPO Memorandum).
[7] Dkt. 386 (Minute Entry).
[8] Dkt. 2 (Indictment); Dkt. 70 (Minute Entry).

1

of supervised release.[9] He has served approximately 40 months of his sentence and has a projected release date of August 1, 2026.[10] Bell is currently housed at Federal Medical Center ("FMC") Butner.[11]

After reviewing the parties' briefing on the matter, the Court ordered the parties to file separate status reports on Bell's lung cancer diagnosis, prognosis, and treatment and his proposed release plan by December 13, 2023.[12] Considering the parties' responses, the Court *sua sponte* expedited the matter and set a motion hearing for December 19, 2023.[13] The Court directed the following persons to appear at the hearing: (1) the Bureau of Prisons' medical provider most familiar with Bell's diagnosis, prognosis, care, and proposed treatment, (2) Bell, (3) USPO, and (4) the proposed private medical provider retained by Bell, if any.[14] At the hearing, Dr. Andrew Stock, Clinical Director of FMC Butner, testified regarding Bell's medical care and records.[15]

### B. Motion for Compassionate Release

In the Motion, Bell contends there are extraordinary and compelling reasons warranting his compassionate release and that release is consistent with the 18 U.S.C. § 3553(a) sentencing factors and U.S. Sentencing Guidelines policy.[16]

First, Bell argues his Stage III-B non-small cell lung cancer constitutes an extraordinary and compelling reason warranting his early release under 18 U.S.C. § 3285(c)(1)(A)(i).[17] Bell argues that BOP's "delay[ed]" and "negligent" diagnosis and treatment of pulmonary nodules, which were identified as potentially cancerous in June 2021,[18] prevented him from being eligible for surgery.[19] While surgery is "the most effective treatment for [Stage III lung cancer]," Bell contends that surgery is unavailable "[d]ue to BOP's negligent care . . . leaving chemotherapy/radiation as the only options."[20] Bell also reports symptoms from severe chronic obstructive pulmonary disease (COPD), emphysema, a history of severe aortic regurgitation (including chest pain, shortness of breath, hypertension, and high blood pressure), two previous cases of COVID-19 (contracted in confinement and requiring hospitalization), an arachnoid cyst, and permanent hearing loss.[21] He

---

[9] Dkt. 274 (Judgment). Counts 3 and 4, Distribution of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C), were dismissed. *Id.*
[10] Dkt. 370 at 1.
[11] Dkt. 366 at 8.
[12] Dkt. 375 (Sealed Order).
[13] Dkt. 381 (Sealed Order); Dkt. 383 (Order Setting Expedited Motion Hearing).
[14] Dkt. 381 at 2–3.
[15] Dkt. 389 (Hearing Transcript) at 5:4–9:15.
[16] Dkt. 366 at 8–14.
[17] *Id.* at 10.
[18] *Id.* at 2.
[19] *Id.* at 12.
[20] *Id.*
[21] *Id.* at 2–7, 10.

2

asserts his "physical health has declined while in BOP custody and he remains vulnerable to further harm due to the delay in his treatment, harsh living conditions, and evolving comorbidities."[22]

Second, Bell argues that given his age, length of sentence served, and the lack of programming available to him, the sentencing factors under 18 U.S.C. § 3553(a) warrant compassionate release.[23] He asserts he "has served almost half of his sentence, not including good time" and that this time served "is sufficient to promote respect for the law."[24] Bell contends BOP has "denied [him] access" to the Residential Drug Abuse Program and other programming that might otherwise have reduced his sentence because his "medical treatment" rendered him "ineligible" for such programs.[25] Thus, he has not received the "necessary educational and vocational training and medical care" he was guaranteed upon sentencing.[26]

Third, Bell asserts that release is consistent with U.S. Sentencing Guidelines policy because he "will not be a danger to the community" upon release.[27] He states that he would agree to a condition of supervised release requiring him to reside at a transitional living facility or under home confinement.[28] He claims this release plan would allow him "to seek appropriate medical care for his chronic medical problems while also participating in drug treatment as part of his supervised release."[29]

The Government opposes the Motion on two grounds. First, the Government contends that Bell has not demonstrated he can adequately "manage his challenging medical conditions if released."[30] While it acknowledges his medical needs are "serious," it argues that BOP "is aware of . . . and is actively engaged in attempting to manage" those needs, as demonstrated by a series of medical encounters in November 2023, the development of treatment plans, and his recent transfer to FMC Butner, a "high-level care" medical facility center.[31] The Government further observes that Bell was aware of his condition during presentencing release, but failed to secure treatment for his medical concerns.[32] The Government questions his ability to independently secure treatment upon release and notes that "disrupting the continuity of care could even be counterproductive."[33]

Second, the Government contends that Bell has not demonstrated that he would "not unreasonably endanger the public" upon release and that the 18 U.S.C. § 3553(a) factors weigh against his release.[34] The Government argues that Bell's "extensive criminal record" and repeated violations

---

[22] *Id.* at 10.
[23] *Id.* at 13–14.
[24] *Id.* at 14.
[25] *Id.* at 8.
[26] *Id.* at 14.
[27] *Id.* at 14.
[28] *Id.* at 15.
[29] *Id.*
[30] Dkt. 369 at 3.
[31] *Id.*
[32] *Id.* at 3–4.
[33] *Id.* at 4.
[34] *Id.*

3

of the conditions of his supervised release, including new criminal conduct, "raise[] serious questions about his risk if granted early release."[35] While Bell identified possible placements for transitional living, the Government argues this is "insufficient" to show that he can be released into the community safely.[36] But if the Court does grant Bell's release, the Government recommends that the balance of his sentence be converted into an additional term of supervised release under 18 U.S.C. § 3582(c).[37]

USPO recommends the Court grant the Motion.[38] USPO notes that given Bell's criminal history, the nature of the underlying offense (conspiracy to distribute controlled substances), and the need to protect the public, a substantial reduction may not be appropriate.[39] However, USPO also notes that Bell's health has significantly deteriorated while in BOP custody, and that his recent lung cancer diagnosis and other medical issues may warrant early release so he can obtain care without having to rely on BOP's scheduling and medical providers.[40] Upon release, USPO recommends Bell reside in transitional housing until he can secure extended care medical housing.[41] USPO does not recommend any additional conditions.[42]

### C. Supplemental Briefing and Motion Hearing

In supplemental briefing prior to the motion hearing, Bell reports his condition is "deteriorating quickly" and that his lung cancer is "advancing at an aggressive rate."[43] Recent medical records show coalescence of two malignant masses,[44] the onset of hemoptysis (coughing up blood), increasingly significant right-sided chest pain, and worsening shortness of breath.[45] Despite these symptoms, Bells asserts that "little appears to be made of this concerning development" by BOP.[46] Bell questions his "continuity and coordination of care" in BOP custody and "whether [his] oncology plan has been appropriately tailored based on the aggressiveness of [his] cancer."[47] Bell further reports that witnessing multiple deaths during his short time at FMC Butner has had a detrimental impact on his mental health and that he is concerned about dying in prison.[48]

Bell reports that upon release, he "will have a place to live, Medicaid and SSI [Supplementary Security Income] coverage, and access to Alaska Behavioral Health services" as well as a

---

[35] *Id.* at 5.
[36] *Id.*
[37] *Id.* at 6.
[38] Dkt. 370 at 2.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] Dkt. 376 (Reply to Government's Response) at 3–4.
[44] Dkt. 378-1 (Sealed Medical Records) at 77.
[45] Dkt. 377-1 (Sealed Medical Records) at 15.
[46] Dkt. 376 at 4.
[47] *Id.*
[48] Dkt. 379 (Sealed Status Report Re: Release Plan) at 3.

"comprehensive plan for his medical treatment."[49] Bell's release plan is to reside at the OAK Residential Treatment & Transitional Housing ("Oak House") in Anchorage.[50] If his pending application is accepted, he also hopes to eventually secure a placement at Providence Extended Care, where he would have "an attentive staff of medical professionals coordinating his care" in a "homelike environment."[51] Bell reports that USPO has expressed support for this release plan and that many processes for his release have already been initiated.[52] At the hearing, USPO confirmed that should he be released, Bell has a place at the Oak House, is eligible for SSI coverage, and has upcoming appointments with providers at Alaska Behavioral Health.[53] USPO also noted that, in his current physical condition, Bell likely does not pose a present risk to the public.[54]

The Government remains opposed to Bell's compassionate release, asserting that Bell is receiving appropriate treatment at FMC Butner, including for pain management, in order to mitigate his symptoms and treat his cancer.[55] BOP intends to keep Bell at FMC Butner during his oncology treatment, and for such time after treatment needed to assess him for recurrence or remission.[56] According to Bell's medical records and Dr. Andrew Stock, Bell is currently receiving chemotherapy drugs, but is not currently receiving radiation treatment.[57] At the hearing, Dr. Stock confirmed that Bell was no longer a surgical candidate due to his comorbidities.[58] He further reported that BOP was waiting on Duke University Health Systems to confirm scheduling for a consultation to assess whether Bell is eligible for stereotactic body radiotherapy ("SBRT") treatment.[59] If Bell is found ineligible for SBRT, he would undergo an alternative radiation treatment at FMC Butner.[60]

---

[49] *Id.*

[50] *Id.* at 2.

[51] *Id.* at 2.

[52] *Id.* Bell reports that USPO Eva Barbee "has confirmed that sufficient resources exist" to manage Bell's medical condition out of BOP custody and "will work with [Bell's] case manager at FMC Butner and/or Alaska Behavioral Health [to] ensure that [Bell] obtains Medicaid and SSI coverage." *Id.* at 1–2.

[53] Dkt. 389 at 46:12–14, 58:25–59:2.

[54] *Id.* at 60:9–18.

[55] Dkt. 380 (Sealed Government Status Report) at 2.

[56] *Id.*

[57] Dkt. 380-1 (Declaration of Dr. Andew Stock) at 2; Dkt. 389 at 15:1–5.

[58] Dkt. 389 at 8:11–13 ("[Cardiothoracic surgeons] indicated that [Bell] was not an appropriate surgical candidate due to his multiple medical comorbidities, poor exercise capacity, and inability to participate in care."), 11:2–3 ("According to the thoracic surgeons, he is not a candidate at this time."); Dkt. 384-1 (Sealed Medical Records) at 3 (indicating Bell is not an appropriate surgical candidate due to medical comorbidities, poor exercise capacity, and inability to participate in care).

[59] Dkt. 389 at 12:4–5 ("[W]e're probably waiting for a date from the radiation oncology team at Duke."); *id.* at 14:18–21 ("Right now we're waiting to see if [Bell is] a candidate for the stereotactic body radiotherapy. . . .[I]f they say he's not a candidate for that, then we'll proceed . . . .").

[60] *Id.* at 9:11–14 ("If [Bell] is not a suitable candidate for [SBRT], we can provide the third . . . line of therapy, which would be the straightforward radiation therapy to that area here at Butner.").

### D. Legal Standard

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to move the district court for a sentence reduction after exhausting their administrative remedies.[61] After considering the applicable factors set forth in § 3553(a), a court may grant the motion if it finds that "extraordinary and compelling reasons warrant such a reduction[.]"[62] A court may look to the policy statement of the U.S. Sentencing Commission, which provides that "extraordinary and compelling reasons" may exist in certain specific circumstances.[63]

The U.S. Sentencing Commission recently amended U.S.S.G. § 1B1.13 to clarify what circumstances may constitute "extraordinary and compelling reasons" for granting compassionate release.[64] While the 2023 Amendments are non-retroactive, the Court may consider non-retroactive changes to sentencing guidelines in deciding whether they provide an extraordinary and compelling basis to reduce a sentence.[65] Under the 2023 Amendments, "extraordinary and compelling" circumstances include medical reasons, such as where:

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is— (i) suffering from a serious physical or medical condition, . . .that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[61] *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018).
[62] 18 U.S.C. § 3582(c)(1)(A).
[63] U.S.S.G. § 1B1.13. The Ninth Circuit has held that the current version of U.S.S.G. § 1B1.13 is "not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A)." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (internal quotation marks omitted). The Ninth Circuit also concluded that a "dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i)[.]" *Id.* at 799.
[64] *See* U.S.S.G. § 1B1.13 (as amended Nov. 1, 2023); *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* at *8 (2023) ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis for a sentence reduction to better account for and reflect the plain language of section 3582(c)(1)(A), its legislative history, and decisions by courts made in the absence of a binding policy statement.").
[65] *See United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (confirming that district courts may consider non-retroactive changes in sentencing law, in combination with other factors, in determining whether there are extraordinary and compelling reasons to grant a sentence reduction); *United States v. Roper*, 72 F.4th 1097, 1099 (9th Cir. 2023) (holding that district courts may consider non-retroactive changes in post-sentencing law to determine whether extraordinary and compelling reasons exist).

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.[66]

However, the policy statement is "not binding" on courts evaluating motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A).[67]

### E. Discussion

As a threshold matter, the Court finds that Bell has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). The Court may consider the Motion only if Bell has "fully exhausted all administrative rights to appeal," or if thirty days have lapsed since BOP has received a request for compassionate release from him.[68] "The § 3582(c)(1)(A)'s administrative exhaustion requirement is mandatory."[69] Here, Bell submitted a compassionate release request to of the warden of U.S. Penitentiary ("USP") Coleman I on March 18, 2022,[70] which was denied on April 5, 2022.[71] After Bell transferred to Federal Correctional Institution ("FCI") Allenwood, Bell submitted another request to that facility's warden on July 18, 2023,[72] which was denied on July 27, 2023.[73] Thus, the Court finds that Bell exhausted his administrative remedies.

After review of the Motion, Bell's medical records, supplemental briefing, and the testimony offered at the hearing on December 19, 2023, and recognizing the exigency of Bell's Stage III lung cancer diagnosis, the Court concludes that Bell has demonstrated "extraordinary and compelling reasons" justifying his release. Further, the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of Bell's early release and that release is consistent with U.S.S.G. policy.

1. Bell's lung cancer diagnosis and treatment in BOP custody demonstrate extraordinary and compelling reasons for release.

The Court finds that Bell has demonstrated extraordinary and compelling reasons warranting his early release. First, Bell's condition appears to be rapidly deteriorating. While Bell's lung cancer was presumed Stage I on August 31, 2023,[74] he was diagnosed with Stage III-B cancer on October

---

[66] U.S.S.G. §§ 1B1.13(b)(1)(A)–(C).
[67] *Aruda*, 993 F.3d at 802 (agreeing with and adopting the rationale from *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not binding on courts considering motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A))).
[68] 18 U.S.C. § 3582(c)(1)(A).
[69] *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).
[70] Dkt. 366 at 7.
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] Dkt. 367-1 (Sealed Medical Records) at 16.

7

25, 2023—less than two months later.[75] On December 1, 2023, a CT scan revealed that two previously distinct nodules had converged into one mass[76]; by December 14, 2023, this mass had enlarged.[77] BOP physicians report that Bell now suffers from "hemoptysis, right sided chest pain, and worsening shortness of breath."[78] Bell was consigned to a wheelchair at FCI Allenwood,[79] and he currently depends on a walker for mobility,[80] has a portable oxygen tank,[81] and harbors increasing "concern about dying in prison."[82] Dr. Stock projected that, even with Bell's current course of treatment, "based upon [Bell's] current diagnosis, his overall survival rate is 44% at 24 months, and 26% at 60 months."[83] Thus, it appears that Bell may be suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).[84]

Second, it appears that Bell may suffer further delays of treatment if he remains in BOP custody. According to Bell's medical records, physicians at the Alaska Department of Corrections ("ADC") first identified nodules in Bell's right lung on January 24, 2020.[85] At that time, physicians recommended a PET/CT scan, biopsy, or follow-up examination to occur within 3 to 6 months, with the possibility of surgery.[86] Nearly a year and a half later, on June 22, 2021, ADC physicians identified larger masses in his lower right lobe and, noting their concerning rate of growth, strongly recommended a needle biopsy and a 6-month follow-up examination.[87] Although BOP was "on notice that Mr. Bell had nodules suspicious of malignancy," Bell contends BOP did "very little, to almost nothing" while he was housed at USP Coleman.[88]

---

[75] *Id.* at 9.
[76] Dkt. 384-1 (Sealed Medical Records) at 26 (noting right lower lobe mass 4.6 cm in diameter compatible with known lung cancer).
[77] *Id.* at 32 (noting a right lower lobe lung mass measuring 5.0 x 2.5 x. 2.3 cm).
[78] Dkt. 376 at 3; *see* Dkt. 377-1 (Sealed Medical Records) at 15.
[79] Dkt. 366 at 8; Dkt. 377-1 at 150.
[80] Dkt. 384-1 at 26.
[81] Dkt. 377-1 at 150.
[82] Dkt. 376 at 4.
[83] Dkt. 380-1 at 2.
[84] U.S.S.G. § 1B1.13(b)(1)(A); *see United States v. Dimmer*, No. 3:12-CR-00035-TMB-1, 2023 WL 1766294, *4 (D. Alaska Feb. 3, 2023) (finding stage 3 colon cancer was "terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" that constituted extraordinary and compelling reasons for early release).; *United States v. Beck*, 425 F. Supp. 3d 573, 582–83 (M.D.N.C. 2019) (finding advanced stage of breast cancer, without "proper treatment," was "terminal illness" that constituted extraordinary and compelling reasons for early release).
[85] Dkt. 367-1 at 1 (noting "1.2 cm solid nodule" and "[a]dditional 6 mm nodule" in "superior segment right lower lobe").
[86] *Id.*
[87] *Id.* ("Enlarging right lower lobe pulmonary parenchymal masses the dominant somewhat spiculated measuring 1.7 cm in greatest diameter. Such is worrisome for indolent slow-growing malignant neoplasm. Recommend percutaneous core biopsy for histologic diagnosis. . . . Such warrants 6 months CT [follow-up].").
[88] Dkt. 366 at 11.

On May 25, 2022, Bell was hospitalized at University of Florida Health Leesburg Hospital ("UF Leesburg") for chest pain.[89] At this visit, physicians observed "pulmonary nodule[s]" and recommended a "pulmonary evaluation."[90] Bell was again hospitalized for chest pain at UF Leesburg on July 7, 2022.[91] An X-ray at that visit showed consolidations in his lung and physicians recommended a clinical correlation.[92] On August 2, 2022, a CT scan showed "2 spiculated lesions with central cavity in right lung" and BOP physicians scheduled a needle biopsy for August 31, 2022 to assess their malignancy.[93] On November 2, 2022, BOP health physicians identified that the nodules in Bell's right lung looked "concerning for metastatic disease" and recommended further investigation.[94] However, Bell did not receive a needle biopsy until June 30, 2023—10 months after its scheduled target date and more than two years after its initial recommendation by ADC.[95] The results from this biopsy confirmed Bell positive for malignant cells and he was diagnosed with non-small cell lung carcinoma on July 5, 2023.[96]

On July 31, 2023, physicians at the University of Pittsburgh Medical Center Hillman Cancer Center noted that surgical removal of the cancerous tissue was not being offered due to Bell's medical comorbidities and recommended a PET scan to assess his treatment options.[97] On August 31, 2023, BOP physicians confirmed Bell's diagnosis as presumed Stage I non-small cell lung cancer and referred him to radiation oncology for further assessment.[98] He was transported to FMC Butner on October 10.[99] Bell began a chemotherapy regimen on October 25, 2023;[100] later that day, he was treated for bone pain related to the chemotherapy and was diagnosed with Stage III-B non-small cell lung cancer.[101]

Although all parties agree that Bell's lung cancer should have been caught earlier, and that earlier intervention likely would have slowed its advance, none are able to explain the lengthy delay in BOP's care between the initial recommendation for a needle biopsy in June 2021 and the procedure in June 2023.[102] While Bell has only been at FMC Butner for a little over two months and in that time appears to have had more than 55 provider visits with both in-house providers and cancer specialists at Duke University Medical Center,[103] the Court is troubled by a delay of more than two years from initial discovery to his biopsy and subsequent late-stage cancer diagnosis.[104] Such

---

[89] Dkt. 367-2 (Sealed Medical Records) at 10.
[90] *Id.*
[91] Dkt. 367-2 at 11.
[92] *Id.*
[93] Dkt. 367-1 at 12.
[94] Dkt. 367-2 at 12.
[95] Dkt. 367-1 at 13.
[96] *Id.*
[97] *Id.* at 15.
[98] *Id.* at 16.
[99] Dkt. 380-1 at 2.
[100] Dkt. 367-1 at 3.
[101] *Id.* at 9.
[102] Dkt. 389 at 38:18–40:15.
[103] Dkt. 380-1 at 3–4.
[104] Dkt. 389 at 49:7–25.

delays raise questions about the efficacy of BOP's medical intake procedures for individuals transferring from State to federal custody and between federal institutions.[105] While there was no clear explanation offered for the delay, what is clear from Bell's medical records is that "the ball was dropped in this case" and that Bell's lung cancer is now Stage III and has recently coalesced.[106]

The Court is concerned that similar delays may occur in the future.[107] BOP physicians noted that Bell's "best outcome may possibly be achieved with surgery," but he has since been disqualified as a surgical candidate due to comorbidities.[108] According to BOP physicians, Bell's next-best course of treatment after surgery is radiation.[109] At the hearing, Dr. Stock testified that Bell's future cancer treatment under BOP care may take two different forms, through: (1) stereotactic body radiotherapy ("SBRT") treatment at Duke University Health Systems (which yields a 90% five-year survival rate), or (2) alternative radiation treatment at FMC Butner (which yields a 70% five-year survival rate).[110] Dr. Stock clarified that SBRT treatment was dependent on Bell's eligibility, and that a consultation request with Duke University was still pending.[111] Dr. Stock also noted that "it [is] up to the [Duke University] hospital to determine when" the consultation would occur, and that the typical turnaround is "variable" and could take a matter of "days to weeks."[112] Moreover, Bell may not be found eligible for SBRT at all due to his other medical conditions.[113] Thus, until Duke responds to the consultation request, Bell is waiting to begin either course of radiation treatment.[114] Considering the unexplained delay between June 2021 to June 2023, the probability for delay in future BOP medical care, and Bell's Stage III lung cancer, the Court echoes Bell's concerns that neither Duke University nor FMC Butner is an adequate setting for his treatment.[115]

---

[105] *Id.* at 66:12–67:23.
[106] *Id.* at 53:11–12; Dkt. 384-1 at 26, 32; *see United States v. Beck*, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019) (noting that while defendant was unable to determine whether BOP's "abysmal" delays in treatment resulted in progression of breast cancer to lymph nodes, "the delay-induced lack of chemotherapy and radiation therapy, and the delays in other procedures, including biopsies and surgery, place[d] her at an abnormally high risk of recurrence").
[107] Dkt. 389 at 53:25–55:22.
[108] Dkt. 384-1 at 35–36; Dkt. 389 at 11:2–3.
[109] Dkt. 389 at 19:13–17 ("[I]f you get a choice you're going to choose surgery. If that's not an option, then you're going to the stereotactic body radiation therapy, and then third line would be the straightforward radiation therapy.").
[110] Dkt. 389 at 18:22–19:20.
[111] *Id.* at 12:4–5, 14:10–11.
[112] *Id.* at 36:25–37:2.
[113] *Id.* at 9:3–15.
[114] *Id.* at 18:22–24 ("[Bell]'s going to get one type of radiation treatment or the other. We're just waiting to see which one.").
[115] *See United States v. Beck*, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (granting compassionate release in part because "BOP delayed scheduling an oncology appointment for five months, and as a result, [defendant] was unable to obtain the benefits of chemo or radiation therapy" for her breast cancer, and noting such delays "indicate[d] BOP [was] unlikely to meet its constitutional obligations in the future.").

10

Given Bell's recent Stage III lung cancer diagnosis, and considering BOP's inconsistent and egregiously delayed treatment in Bell's case, the Court concludes that Bell has demonstrated extraordinary and compelling reasons warranting early release.[116]

2. The Court finds Bell's proposed release plan is appropriate.

The Court also finds that Bell's proposed release plan is appropriate in light of his diagnosis. USPO identified the Oak House in Anchorage as the most appropriate residence, as it a federally contracted facility, and reported that the Oak House Director has been apprised of Bell's situation and is eager to accommodate him.[117] At the hearing, USPO confirmed that Bell has secured a placement at the Oak House.[118] Although Bell has not yet established care with a private oncologist, USPO has established a health advocate through Alaska Behavioral Health services and reported that the ultimate goal is to get him accepted at Providence Extended Care.[119]

At the hearing, USPO also reported that Bell is eligible for SSI benefits, having received them in the past, and will work with his health advocate to ensure his continued access to medications and drug-treatment programs post-release.[120] Thus, upon release, Bell likely will have a place to live, Medicaid and SSI coverage, and access to Alaska Behavioral Health services, as well as a comprehensive plan for his medical treatment.[121] USPO's support of the Motion, Bell's planned residence, and his demonstration of his SSI and Medicaid eligibility indicate that this proposed plan will provide a conducive environment for Bell's release and cancer treatment.[122]

Given his recent medical encounters at FMC Butner, it appears Bell has experienced higher-quality medical care after his transfer due to the facility's in-house medical resources and relationship with

---

[116] *See United States v. Dimmer*, No. 3:12-CR-00035-TMB-1, 2023 WL 1766294, *4–5 (D. Alaska Feb. 3, 2023) (finding defendant's stage 3 colon cancer and unexplained delays in BOP's diagnosis and treatment together constituted extraordinary and compelling reasons for early release); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 683 (N.D. Cal. 2019) (noting that "a compelling reason [for release] exists when BOP appears unable to provide [medical care] without court oversight"); *see also United States v. Beck*, 425 F. Supp. 3d 573, 577, 580–81 (M.D.N.C. 2019) (finding that BOP's "repeated delays" in providing treatment for defendant's invasive breast cancer "clearly raise[d] a significant risk of relapse and irreparable harm" and that such "gross mismanagement of medical care for an inmate's deadly disease is extraordinary").
[117] Dkt. 379 (Sealed Status Report Re: Release Plan) at 2.
[118] Dkt. 389 at 58:19–22.
[119] Dkt. 379 at 2; Dkt. 389 at 58:25–59:2.
[120] Dkt. 389 at 46:12–23, 58:19–59:4; Dkt. 379 at 3.
[121] Dkt. 379 at 3.
[122] *See United States v. Dimmer*, No. 3:12-CR-00035-TMB-1, 2023 WL 1766294, *6 (D. Alaska Feb. 3, 2023) ("In addition, although [defendant] has not yet established care with a private oncologist or surgeon, he has demonstrated that he has private insurance coverage, a private primary care physician, and has identified a specific oncologist available within his insurance network.").

11

Duke University Medical Center.[123] At the hearing, the Court provided an opportunity for Bell to reaffirm his intent to be released to Anchorage.[124] At the hearing, Bell confirmed that he sought to pursue his Anchorage release plan, expressing both that he was concerned that he would not receive sufficient medical care at FMC Butner and that he would die in prison.[125]

3. The § 3553(a) factors weigh in favor of Bell's early release.

The Court also finds the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of compassionate release in this case.[126] Bell is 57 years old and has served 40 months—55.5%—of the 72-month sentence originally imposed. USPO notes that Bell has a history of compliance while in BOP custody, having "incurred no disciplinary infractions."[127] USPO further notes that Bell completed a Drug Education Course and initially qualified for participation in RDAP,[128] though BOP later deemed him ineligible for the program due to his complex medical condition.[129] While the underlying facts of his federal conviction were serious, involving Bell's "participat[ion] in the sale of methamphetamine in Alaska," his conduct was nonviolent and occurred "on one occasion."[130]

In its opposition, the Government cites Bell's criminal history, history of drug use while on pretrial release, and statistics of recidivism for individuals with similarly high criminal history categories to argue that the § 3553(a) factors weigh against his release.[131] However, the Court disagrees with the Government's position that Bell is currently a danger to the community such that his release should be denied. Particularly given Bell's dire health condition, the Court is convinced that his history of compliance while in BOP custody and the substantial time he has already served satisfy the goals of sentencing in this case.[132]

---

[123] Dkt. 389 at 47:23–49:25; *id.* at 61:21–22 (noting that "albeit late, BOP is making an active effort to get [Bell] seen and treated at Duke.").
[124] *Id.* at 55:10–22, 61:17–62:5.
[125] *Id.* at 64:4–9 ("[Bell] does not have confidence that he will be prioritized in the way that he needs to be prioritized if he remains at FMC Butner. So he has made an informed decision that he would rather return to Alaska and be here and see what treatment is available here, than pursue treatment with Duke.").
[126] Dkt. 389 at 67:24–68:15.
[127] Dkt. 370 at 1.
[128] *Id.*; Dkt. 389 at 58:11–12 ("[T]he records . . . just show that [Bell]'s been screened and that he qualifies for the RDAP program.").
[129] Dkt. 366 at 8; Dkt. 389 at 57:19–22 (noting that BOP has "indicated to [Bell] that his medical condition is complex rendering him ineligible for . . . RDAP" and that BOP is "not pursuing RDAP on his behalf at this point.").
[130] Dkt. 368 at 2; Dkt. 389 at 68:12–15.
[131] Dkt. 368 at 4–5.
[132] *See Dimmer*, 2023 WL 1766294, *6 (finding sentencing factors favored release of defendant convicted of nonviolent drug conspiracy charge where defendant demonstrated substantial compliance in BOP custody, completed educational and drug treatment classes, and had served over half his sentence).

4. The Court finds Bell can be safely released to the public.

Further, the Court finds that Bell "is not a danger to the safety of any other person or to the community."[133] Thus, his early release is "consistent with applicable policy statements issued by the Sentencing Commission."[134] The Government expresses concern about Bell's "extensive criminal record," which started when he was 18 years old, and argues that "he has never shown a sustained period of law abiding behavior while out of custody."[135] The Government also argues that Bell has "repeatedly violated the conditions of release," including performing new criminal conduct, and that "neither his medical needs . . . nor his desire to remain at liberty to address them was sufficient to secure his compliance" upon release.[136]

While USPO agrees that Bell's criminal history is "lengthy," it also observes that the need to address his deteriorating health issues outweighs these concerns.[137] Moreover, during the hearing, USPO reported that Bell's health is so precarious that he likely does not pose a danger to the public in his current state.[138] Acknowledging the seriousness of Bell's criminal history, the Court finds that Bell's history of compliance in custody, coupled with his imperative need for cancer treatment, outweigh any suggested risk presented by his past criminal record.[139] The Court also notes that Bell will be subject to five years of supervised release, which mitigates concerns that he will pose a risk to the public upon release.[140]

Accordingly, and for the reasons discussed above, the Motion at Docket 366 is **GRANTED** with the following conditions:

1. Consistent with the Court's oral directive at the hearing, an Amended Judgment was entered[141] that ensures Bell's release from FMC Butner and transition to Oak House ten days from the date of the hearing, December 19, 2023, to allow BOP sufficient opportunity for Bell's safe transport.

---

[133] U.S.S.G. § 1B1.13(a)(2); *see* Dkt. 54 at 4 (citing Dkt. 43); Dkt. 389 at 68:12–15 ("Given Mr. Bell's current age and health and the fact that this incident was nonviolent, the Court is persuaded that Mr. Bell does not pose a danger to the community.").
[134] Dkt. 51 at 13.
[135] Dkt. 368 at 4.
[136] *Id.* at 5.
[137] Dkt. 370 at 2.
[138] Dkt. 389 at 60:12–18 ("I think in his condition— . . . he's on a walker now; he uses oxygen . . . . He could hardly walk without . . . having a hard time breathing, hyperventilat[ing], gasping for air; so I don't see him as a danger to the community in his condition.").
[139] *See United States v. Dimmer*, No. 3:12-CR-00035-TMB-1, 2023 WL 1766294, *6 (D. Alaska Feb. 3, 2023) (noting, but rejecting, Government's argument that defendant could not be safely released when it "relie[d] only on [defendant's] past criminal history").
[140] *See id.* (finding ten years of supervised release similarly "mitigate[d] the concerns that [defendant] will pose a danger to his community upon release").
[141] Dkt. 387 (Amended Judgment).

13

2. Concurrent with Bell's release, BOP shall provide Bell with a 30-day supply of his medications and a copy of his medical records to take with him.

3. Bell shall be subject to all the standard and special conditions of supervised release imposed in his original judgment.

4. The Bureau of Prisons is responsible for the health and well-being of federal inmates as they serve their sentences of imprisonment. In light of what occurred in this case, the Government is strongly encouraged to investigate the causes of the delay in BOP's medical care evident in this case and raise them with BOP's General Counsel to prevent similar future delays and detrimental medical outcomes to the health and well-being of inmates in BOP's charge.[142]

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: December 26, 2023.

---

[142] Dkt. 389 at 66:23–67:23.